IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 18-0776

_____

FILED
**April 22, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MELISSA WILFONG,
Plaintiff Below, Petitioner

v.

RANDOLPH COUNTY BOARD OF EDUCATION,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Louis H. Bloom
Case No. 18-AA-188

AFFIRMED
_____

Submitted: February 19, 2020
Filed: April 22, 2020

Andrew J. Katz, Esq.
The Katz Working Families' Law
Firm, LC
Charleston, West Virginia
Counsel for Petitioner Melissa
Wilfong

Denise M. Spatafore, Esq.
Dinsmore & Shohl, LLP
Morgantown, West Virginia
Counsel for Respondent Randolph
County Board of Education

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "Grievance rulings involve a combination of both deferential and plenary review.  Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference.  Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syllabus Point 1, *Cahill v. Mercer County Board of Education*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

2.    "'A final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W. Va. Code, [6C-2-1], et seq. [], and based upon findings of fact, should not be reversed unless clearly wrong.' Syl. pt. 1, *Randolph County Bd. of Educ. v. Scalia*, 182 W. Va. 289, 387 S.E.2d 524 (1989)."  Syllabus Point 3, *Armstrong v. West Virginia Division of Culture and History*, 229 W. Va. 538, 729 S.E.2d 860 (2012).

3.    "[West Virginia Code § 6C-2-4(a)(1)] contains a discovery rule exception to the time limits for instituting a grievance.  Under this exception, the time in which to invoke the grievance procedure does not begin to run until the grievant knows of the facts giving rise to a grievance."  Syllabus Point 1, *Spahr v. Preston County Board of Education*, 182 W. Va. 726, 391 S.E.2d 739 (1990).

WALKER, Justice:

The Board of Education of Randolph County (Board) employed Melissa Wilfong as a half-time principal and half-time teacher at Valley Head Elementary School, which closed at the end of the 2016-2017 school year. In April of 2017, the Board approved Ms. Wilfong for transfer to another position and informed her that she did not yet have an assignment for the following school year. In August, Ms. Wilfong accepted a full-time teaching position and then grieved the Board's alleged failure to place her in a full-time administrative position. The Public Employees Grievance Board (Grievance Board) denied Ms. Wilfong's grievance as untimely. The circuit court affirmed the Grievance Board's order and Ms. Wilfong now appeals that order to this Court. Because Ms. Wilfong filed her grievance outside the time limitation imposed by West Virginia Code § 6C-2-4(a)(1), we affirm the circuit court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Board employed Ms. Wilfong at Valley Head Elementary School for approximately six years before the school closed at the end of the 2016-2017 school year. The Board notified Ms. Wilfong by letter dated March 17, 2017, that because of the closure she would be recommended for transfer for the upcoming 2017-2018 school year. At that time, Ms. Wilfong was employed in a unique position as a half-time principal and half-time teacher. So, Ms. Wilfong was ineligible for direct transfer to any other position in the county. Only one other individual held a position similar to Ms. Wilfong's, a principal and

1

math teacher at Pickens School. Ms. Wilfong was not eligible to transfer into that position because she lacked a required mathematics certification.[1]

At a special meeting on April 18, 2017, the Board approved Ms. Wilfong for transfer for the upcoming school year. At the same meeting, the Board considered "bumping" the least-senior assistant principal in the county to place Ms. Wilfong in that administrative position, which would have constituted a promotion to full-time administrator, but ultimately voted not to do so.[2]

On April 20, 2017, the Board notified Ms. Wilfong by letter that she had been approved for transfer, but not assigned a position for the 2017-2018 school year. Shortly after Ms. Wilfong received the letter, she contacted the Board for clarification regarding future assignment. Denise Fletcher, the Board's Director of Personnel, advised Ms. Wilfong that she would be an automatic applicant for all positions posted for which she was qualified. According to Ms. Fletcher, this meant that Ms. Wilfong would be in the pool of applicants, but would still need to submit applications and be interviewed for any job postings. At the Level III hearing on this matter, exhibits and Ms. Fletcher's testimony established that several administrative positions[3] opened in the spring and summer of 2017,

---

[1] Ms. Wilfong has the following certifications: Multi-Subject (K-8); Reading Specialist; and Superintendent/Supervisor/Principal.

[2] The facts underlying the Board's decision on this matter are not before this Court on appeal.

[3] The open positions included: Assistant Superintendent of Randolph County Schools; Director of Special Education at the Randolph County Schools Central Office; Director of Curriculum and Federal Programs at the Randolph County Schools Central

but Ms. Wilfong declined to participate in the application process or to be interviewed for those positions.

On July 1, 2017, Gabriel Devono became the new superintendent. Sometime before that, the Board informed him of the circumstances surrounding Ms. Wilfong's transfer and he met with her to discuss the matter. At this meeting in June 2017, Mr. Devono advised Ms. Wilfong to apply for every position for which she was qualified to secure her exact employment position for the 2017-2018 school year. During the Grievance Board hearings, Mr. Devono testified that, if Ms. Wilfong had not submitted any applications by the time the school year commenced, he had the authority to place her in any available position without her input.

On June 14, 2017, Ms. Wilfong told Ms. Fletcher in an email that she would only apply for the principal position at George Ward Elementary School should it become available. The position became available and Ms. Wilfong submitted an application on July 17, 2017. There was more than one applicant for the position and the Board conducted interviews, but Ms. Wilfong did not get the job. As the beginning of the school year drew nearer, Ms. Wilfong applied on July 26, 2017, for a Remedial Specialist position, a full-time teaching position, at Tygarts Valley Middle and High School. The Board hired her for that position on August 1, 2017.

---

Office; Director of Technology and Communications at Randolph County Schools Central Office; and full-time principal positions at Elkins High School, Elkins Middle School, Third Ward Elementary School, Coalton Elementary School, and Harman School.

On the same day, Ms. Wilfong filed her grievance, complaining that the Board failed to place her in an administrative position within the county. At the Level III hearing on November 13, 2017, the Board argued that Ms. Wilfong filed her grievance outside of the fifteen-day window provided by West Virginia Code § 6C-2-4(a)(1). Essentially, the Board contended that Ms. Wilfong should have filed her grievance within fifteen days of receiving the April 20 letter informing her that she had not been assigned a position for the upcoming school year. Ms. Wilfong argued that she was not aggrieved until she knew with finality that the Board would not place her in an administrative position, a fact that only became apparent when the Board hired her as a Remedial Specialist on August 1, 2017. The Grievance Board agreed with the Board and denied Ms. Wilfong's grievance as untimely on January 25, 2018.

On March 9, 2018, Ms. Wilfong filed an appeal in the Circuit Court of Kanawha County. The circuit court agreed that Ms. Wilfong's grievance was untimely and, by order dated August 3, 2018, affirmed the Grievance Board's decision. On September 5, 2018, Ms. Wilfong appealed that order to this Court.

## II. STANDARD OF REVIEW

We have previously held that "[t]his Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the

ALJ."[4] West Virginia Code § 6C-2-5(b) sets that standard and explains the elevated burden

an appellant must meet:

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
>
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
>
> (2) Exceeds the administrative law judge's statutory authority;
>
> (3) Is the result of fraud or deceit;
>
> (4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

As we held in Syllabus Point 1 of *Cahill v. Mercer County Board of Education*,[5] our review

is part plenary and part deferential:

> [g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

---

[4] *Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995).

[5] 208 W. Va. 177, 539 S.E.2d 437 (2000).

5

Finally, we have held that "[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W. Va. Code, [6C-2-1], et seq. [], and based upon findings of fact, should not be reversed unless clearly wrong."[6] With these standards in mind, we now address Ms. Wilfong's appeal.

## III. DISCUSSION

West Virginia Code § 6C-2-4(a)(1) sets a fifteen-day time limit for persons filing a grievance. In pertinent part, that code section states:

> Within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date upon which the event became known to the employee, or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, an employee may file a written grievance with the chief administrator stating the nature of the grievance and the relief requested and request either a conference or hearing.

Ms. Wilfong's single assignment of error to this Court asks us to determine whether the fifteen-day time limit for filing a grievance was triggered by (1) receipt of the April 20, 2017, letter informing her that she had not been assigned to a new position, or (2) transfer into a non-administrative position within the school system on August 1, 2017. Ms. Wilfong argues that, under West Virginia Code § 6C-4-2(a)(1), the clock did not start to run until August 1 because her transfer to a non-administrative position was not finalized

---

[6] Syl. Pt. 3, *Armstrong v. W. Va. Div. of Culture and History*, 229 W. Va. 538, 729 S.E.2d 860 (2012) (citing Syl. Pt. 1, *Randolph County Bd. of Educ. v. Scalia*, 182 W. Va. 289, 387 S.E.2d 524 (1989)).

until the date of her new employment. Conversely, the Grievance Board and the circuit court found that the time began to run when Ms. Wilfong received the April 20 letter, because, as the circuit court explained, that was "the date on which [Ms. Wilfong] learned she was being transferred with no assurances of being transferred to an administrative position to which she believed to be entitled."

In Syllabus Point 1 of *Spahr v. Preston County Board of Education*,[7] we interpreted this statute, holding that "[West Virginia Code § 6C-2-4(a)(1)] contains a discovery rule exception to the time limits for instituting a grievance. Under this exception, the time in which to invoke the grievance procedure does not begin to run until the grievant knows of the facts giving rise to a grievance."

And, we are guided by our prior application of the *Spahr* holding in *Rose v. Raleigh County Board of Education*.[8] In *Rose*, the Raleigh County Board of Education voted to terminate a special summer schedule which permitted central office employees to have Wednesday afternoons off in exchange for a lower county supplement in their pay.[9] The Board formally notified the employees of this decision by letter dated April 6, 1994,[10] and issued a memorandum on June 7, 1994, announcing the new summer schedule

---

[7] 182 W. Va. 726, 391 S.E.2d 739 (1990).

[8] 199 W. Va. 220, 483 S.E.2d 566 (1997).

[9] *Id*. at 221, 483 S.E.2d at 567.

[10] *Id*.

7

requiring all employees to work on Wednesday afternoons.[11]  Several central office

employees filed their grievances within fifteen days of receiving the June 7 letter, but the

Raleigh County Board of Education opposed the grievance as untimely because the Board

notified the grievants of the change in schedule on April 6, not June 7.[12]  The Grievance

Board agreed that the filing was untimely.[13]  On appeal, the circuit court also found the

grievance to be untimely and explained that the event which triggered the running of the

limitation period was the April 6, 1994, letter that informed the grievants of the Board's

decision to terminate the special summer schedule.[14]  We affirmed and explained the

application of the discovery rule:

> [T]his Court cannot conclude that the hearing examiner was clearly wrong in holding in the case presently under consideration that the limitation period began to run when the appellants were clearly notified of the decision to eliminate the special summer schedule, for in similar administrative proceedings *the running of the relevant time period is ordinarily deemed to begin to run when the employee is unequivocally notified of the decision.*[15]

---

[11] *Id*.

[12] *Id*.

[13] *Id*.

[14] *Rose*, 199 W. Va. at 221-22, 483 S.E.2d at 567-68.

[15] *Id.* at 222, 483 S.E.2d at 568 (citing *Naylor v. West Virginia Human Rights Commission*, 180 W. Va. 634, 378 S.E.2d 843 (1989) (emphasis added).

In Ms. Wilfong's case, the Board voted to approve her for transfer at a special board meeting on April 18, 2017. On April 20, 2017, the Board memorialized its approval in a letter to her that stated, in pertinent part:

> "Please be advised that at a special meeting of the Board of Education of the County of Randolph . . . [t]he Board did approve your transfer for the 2017-2018 school year. When the final recommendation for your assignment for the 2017-2018 school year is made by the Superintendent and approved by the Board, you will be notified."

Although Ms. Wilfong's transfer was approved, the Board did not assign her to an administrative position. Nothing in the letter guaranteed that the Board would place Ms. Wilfong in an administrative assignment for the upcoming school year or that the approved transfer entitled her to such an assignment. The crux of Ms. Wilfong's grievance is that the Board did not assign her to an administrative position, a fact that she unequivocally knew once she received the April 20 letter.

In fact, the totality of the circumstances surrounding Ms. Wilfong's transfer and the special board meeting confirm that she was never assured such administrative placement. First, she was ineligible to transfer to the only other identical position in the county due to her lack of a mathematics certification. Second, the Board explicitly declined to bump the county's least-senior assistant principal, who occupied a full-time administrative position, to create a placement for Ms. Wilfong. Third, the record shows that in the days immediately following Ms. Wilfong's receipt of the April 20 letter, Ms. Fletcher informed her that she would be an automatic applicant for all positions in the county for which she was qualified, though "automatic applicant" is somewhat of a

9

misnomer. As Ms. Fletcher explained at the Level III hearing below, "automatic applicants" are still required to apply for and be interviewed for available jobs in the county. Finally, the record establishes that several administrative positions became available for which Ms. Wilfong was qualified, but she declined to apply for them and instead applied only for the principal position at George Ward Elementary School in late July. All of these facts support the conclusion that, as of April 20, 2017, the Board had unequivocally notified Ms. Wilfong that it did not have an administrative position into which she could transfer – the very outcome that she grieved on August 1, 2017.

We reject Ms. Wilfong's contention that she was only aware of the facts surrounding her grievance when her employment was finalized on August 1, 2017, because, as we previously acknowledged in *Rose*, the relevant time period ordinarily "begins to run when the employee is unequivocally notified of the decision."[16] Here, the Board unequivocally notified Ms. Wilfong that it could not assign her to any position on April 20, 2017. That decision was the event giving rise to her grievance. As such, the Board fully apprised Ms. Wilfong of the facts giving rise to her grievance in the April 20 letter, so that was the date on which the fifteen-day time limitation for filing a grievance under West Virginia Code § 6C-2-4(a)(1) began to run. By filing her grievance on August 1, 2017, Ms. Wilfong filed outside the limit imposed by that statute. Therefore, we

---

[16] *Rose,* 199 W. Va. at 222, 483 S.E.2d at 568.

conclude that the circuit court did not err in affirming the Grievance Board's denial of Ms. Wilfong's grievance.

## IV.  CONCLUSION

Based on the foregoing, we affirm the August 3, 2018, order of the Circuit Court of Kanawha County which upheld the Public Employees Grievance Board's denial of Ms. Wilfong's grievance as untimely.

Affirmed.